**WASTE DISPOSAL CENTER, INC., Appellant,**

v.

**Michelle LARSON and Soila Valdez, et al., Appellees.**

**No. 13–00–241–CV.**

Court of Appeals of Texas, Corpus Christi.

May 2, 2002.

Rehearing Overruled May 30, 2002.

Linda C. Breck, Ronald B. Brin, Thomas F. Nye, Brin & Brin, Corpus Christi, for Appellant.

Denman H. Heard, Richard N. Countiss, John E. Williams, Jr., Jeffrey S. Thompson, Williams–Bailey Law Firm, Thomas E. Bilek, Hoeffner, Bilek & Eidman, Houston, for Appellees.

Before Chief Justice VALDEZ and Justices HINOJOSA and RODRIGUEZ.

## OPINION

Opinion by Justice RODRIGUEZ.

This is a limited appeal from a jury trial. *See* Tex.R.App. P. 34.6(c)(1). Appellant, Waste Disposal Center, Inc. (Waste Disposal), appeals from a judgment rendered in favor of appellees, Soila Valdez and Michelle Larson. By four issues, Waste Disposal contends there is no evidence to support the jury's award of actual damages, and because there is no evidence of

actual damages, exemplary damages and court costs should not have been recovered. By three issues, cross-appellants, Soila Valdez, Marcus, Norma and Frederick Atkinson, as statutory wrongful death beneficiaries and sole heirs of Frederick James Atkinson (Deceased), Javier Gomez, Jr., by next friend Dolores L. Gomez, and Abel and Belinda Valdez (landowners), bring a cross-appeal against cross-appellees, Waste Disposal and the estate of Franklin F. Kelley (Estate). The landowners contend the trial court erred in dismissing their suit against the Estate on jurisdictional grounds and by failing to charge the jury on their claims of strict liability. Cross-appellant Soila Valdez also argues that the exemplary damages cap is not constitutional. We affirm, in part, and reverse and render, in part.

## I. Background

Multiple plaintiffs, including Valdez and Larson, filed suit against numerous defendants who owned, operated, or transported waste to a landfill located at the intersection of County Road 39 and FM 1945 in Sinton, Texas. The plaintiffs sought damages for both personal injury and property damages, alleging multiple causes of action, including negligence, trespass, and nuisance. Valdez and Larson, among other plaintiffs, went to trial against several defendants including Browning Ferris, Inc., a/k/a BFI Waste Systems of North America, Inc. (BFI), and appellant, Waste Disposal. The jury found Waste Disposal's and BFI's negligence proximately caused property damage to Larson and Valdez. It also found Waste Disposal and BFI committed a willful trespass and created a nuisance on Valdez's property. The jury awarded Valdez $20,000.00, and Larson $2,500.00, for diminution of the market value of their respective properties. The jury further awarded Valdez $25,000.00 for mental anguish arising as a result of the

willful trespass and the nuisance. No mental anguish damages were awarded to Larson. Finally, the jury awarded Valdez $1,000,000.00 in exemplary damages against BFI and $500,000.00 in exemplary damages against Waste Disposal.

After the jury verdict, but prior to entry of judgment, Valdez and Larson fully compromised and settled their claims with some of the defendants, including BFI. Without granting Waste Disposal's motion to disregard the jury's findings, and after applying the settlement credit, the trial court entered judgment in favor of Valdez and against Waste Disposal in the sum of $200,000.00 as exemplary damages, plus post-judgment interest and costs of $50,753.87.

## II. Diminution of Market Value

By its first issue, Waste Disposal contends there is no evidence of a diminution in market value of either Valdez's property or Larson's property. Waste Disposal argues that testimony given by Valdez and Larson reflects only their personal, subjective feelings, and does not quantify market value or any reduction thereof.

### A. Standard of Review

In determining whether legally sufficient evidence supports the jury's findings, we must review all evidence in the light most favorable to the party in whose favor the verdict has been rendered, and disregard all inferences to the contrary. *Bradford v. Vento*, 48 S.W.3d 749, 754 (Tex.2001). We must determine whether that evidence "would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997); *see Formosa Plastics Corp., v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex.1998); *Tex. Workers' Comp. Ins.*

*Fund v. Serrano,* 985 S.W.2d 208, 210 (Tex.App.—Corpus Christi 1999, pet. denied). The verdict must remain intact unless there is (1) no evidence of a vital fact; (2) the evidence supporting the fact has no legal viability; (3) the evidence is no more than a scintilla; or (4) the evidence conclusively proves the opposite fact. *Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.,* 793 S.W.2d 660, 666 (Tex.1990).

### B. The Law

■ A property owner can provide opinion testimony regarding diminution in market value resulting from permanent damage to land, but the testimony must show that the diminution refers to market value rather than intrinsic value or some other value. *Porras v. Craig,* 675 S.W.2d 503, 504 (Tex.1984). Texas courts have defined market value as the price that property would bring when offered for sale by one who desires, but is not obliged to sell, and is bought by one who is under no necessity to buy. *City of Harlingen v. Estate of Sharboneau,* 48 S.W.3d 177, 182 (Tex.2001) (citing *State v. Carpenter,* 126 Tex. 604, 618, 89 S.W.2d 979, 979, *modifying* 126 Tex. 604, 89 S.W.2d 194, 202 (1936)); *Bailey County Appraisal Dist. v. Smallwood,* 848 S.W.2d 822, 824–25 (Tex. App.—Amarillo 1993, no writ). "On the other hand, intrinsic value is an inherent value not established by market forces; it is a personal or sentimental value." *Star Houston, Inc. d/b/a Star Motor Cars v. Kundak,* 843 S.W.2d 294, 298 (Tex.App.—Houston [14th Dist.] 1992, no writ) (citing BLACK'S LAW DICTIONARY 739 (5th ed. 1979)).

### C. Valdez's Property

■ Valdez testified she paid $45,000.00 for her property. The purchase value was also supported, in part, by the admission of the 1981 deed and deed of trust that established the assumption of two debts totaling $37,521.80. While the general rule is that statements about the initial cost of a home are not admissible to show market value at the time of loss, *see Redman Homes, Inc. v. Ivy,* 920 S.W.2d 664, 669 (Tex.1996), no objection was made to this evidence. *See* TEX.R.APP. P. 33.1. Nonetheless, Valdez also testified that her property was not worth what she originally paid for it, that her property "is not worth anything anymore," and nobody "would buy the place as it is." She also testified that she would not want to "sell her property to another person"; she would not give another family the problems she has had. This is some evidence of Valdez's opinion concerning how the market value has diminished as a result of permanent damage to the land. *See Porras,* 675 S.W.2d at 504. It is some evidence of the price her property would bring if she desired but was not obliged to sell to one who was under no necessity to buy. *See City of Harlingen,* 48 S.W.3d at 182; *Bailey,* 848 S.W.2d at 824–25.

Waste Disposal argues that market value is not established when an owner testifies that her property has no value, with nothing more to support her testimony. The cases Waste Disposal relied on, however, are distinguishable from the present case. *Pontiac v. Elliott,* 775 S.W.2d 395, 399 (Tex.App.—Houston [1st Dist.] 1989, writ denied), and *Vista Chevrolet, Inc. v. Lewis,* 704 S.W.2d 363, 371 (Tex.App.—Corpus Christi 1985), *aff'd in part, rev'd in part,* 709 S.W.2d 176 (Tex.1986), involved deceptive trade practice claims. In each case, the measure of damages was the difference between the market value of the vehicle warranted and the market value of the vehicle delivered. *Elliott,* 775 S.W.2d at 399; *Lewis,* 704 S.W.2d at 371. In the present case, Valdez's complaints are of negligence, trespass and nuisance, not that

she received less than she was promised when she purchased her home.

Reviewing all evidence in the light most favorable to Valdez, we conclude the evidence "would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711 (Tex. 1997). Thus, the evidence is legally sufficient to establish a diminution in market value of Valdez's property.

### D. Larson's Property

■ Larson testified the normal resale value, the market value, of her property before the waste disposal issues arose was $40,000.00. This value included the initial cost of the land in 1996, and subsequent improvements. Larson further testified the current value for the land "with the contamination" was zero, and she would not sell the land to anyone and doubted that "anybody would buy it."

Applying the same analysis as above, we conclude that this evidence is legally sufficient to establish a diminution in market value of Larson's property.

Waste Disposal's first issue is overruled.

### III. Mental Anguish Damages Awarded Valdez

In its second issue, Waste Disposal contends there is no evidence to support the jury's award of mental anguish damages to Valdez as a result of the alleged property damage.

### A. The Law

■ "[A]n award of mental anguish damages will survive a legal sufficiency challenge when the plaintiffs have introduced direct evidence of the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex.

1995). When a claimant fails to present direct evidence of the nature, duration, or severity of mental anguish, we apply a traditional no evidence standard to determine whether the record reveals any evidence of "a high degree of mental pain and distress" that is more than mere worry, anxiety, vexation, embarrassment, or anger, to support any award of damages. *Id.*

### B. Analysis

Valdez provided the following testimony regarding her alleged mental anguish.

Q: Now, in—at least in February he's not showing that your platelet count is outside the normal range anymore; is that correct?

A: That's right.

Q: The normal range is 130 to 400, and you're down at 150, but your understanding is you're still within the range, though down at the bottom?

A: Right.

Q: Now, however, at least from the time that Doctor Avery identified the problem in I believe August of 1996, excuse me, toward the end of 1996 to July of 1997 when you went to Doctor Lovoi, you were—your results were significantly lower than that.

A: Yes, I believe so.

Q: Now, even though your blood problems have improved somewhat, has Doctor Lovoi told you that you don't need to be concerned with this issue anymore?

A: No, he hasn't told me not to be concerned.

Q: If it's—is it to the contrary, are you—are you in fact concerned?

A: I am very concerned about it, yes.

* * * * * *

Q: (By Ms. Thornton) Did the issue—the question was if the issue of leukemia came up in your discussions with Doctor Lovoi?

A: Yes, it came up all the time.

\* \* \* \* \* \*

Q: If I remember it and if it makes sense. The question was: You told us that the issue of the possibility of leukemia for you has come up in your discussion with your doctor.

A: Yes, ma'am.

Q: And what we need to understand is how that, or if it, has affected you, and affected the concerns that you had for your health.

A: Very much so. I'm very concerned about that.

Q: I know that you said you're a private person and that you're not comfortable discussing this, but you understand that you need to talk to the jury and explain to them if this does have an affect on you.

A: It definitely has an effect on me. If anything else shows up on my blood, it's like who wants to have this? I mean, my family worry [sic] about it, and I mean [they are] always pushing me to go see the doctor. And like I said, I don't like to talk about my health. I'm not—I'm very private, I don't like to do that, but that is something that has to be of concern. I'm very concerned about it. It just makes me sick. Really makes me sick to think that I'm going to get maybe even worse later on in my life.

■ The testimony above is the only evidence we find regarding mental anguish damages. We conclude this testimony provides no evidence of the nature, duration, or severity of Valdez's mental anguish, nor does it establish a substantial disruption in her daily routine. *See id.* Furthermore, the statements do not reveal any evidence of "a high degree of mental pain and distress" that is "more than mere worry, anxiety, vexation, embarrassment, or anger" to support any award of damages. *Id.* The testimony shows Valdez was concerned, and felt worry, frustration, and perhaps anger and embarrassment. However, for the most part, this testimony only refers to the existence of "mere emotions." It does not support the conclusion that she suffered compensable mental anguish. Moreover, the Texas Supreme Court has concluded that no action for fear of an increased risk of developing a disease when no disease is presently manifest, should be recognized. *Temple–Inland Forest Prods. v. Carter,* 993 S.W.2d 88, 93 (Tex.1999). Accordingly, we conclude there is no evidence to support the jury's award of mental anguish damages to Valdez. Waste Disposal's second issue is sustained.

### IV. Exemplary Damages

■ By its third issue, Waste Disposal contends the award of exemplary damages to Valdez cannot stand absent an award of actual damages.[1] However, we have con-

---

1. Waste Disposal argues by its third issue that the award of exemplary damages cannot stand absent an award of actual damages. However, by one paragraph, it generally cites to *Louisiana–Pacific Corp. v. Andrade,* 19 S.W.3d 245, 247–48 (Tex.1999), and *Mobil Oil Corp. v. Ellender,* 968 S.W.2d 917, 921 (Tex.1998), and contends exemplary damages may not be recovered in this case because

there is no evidence in the record to support the jury's finding regarding malice. This is the only reference Waste Disposal makes to this argument. It does not discuss relevant facts to support this argument, or provide this Court with additional authority. Tex.R.App. P. 38.1(h). "We will not perform an independent review of the record and applicable law to determine whether the error complained of

cluded the evidence was legally sufficient to support an award of property damages based on willful trespass and/or nuisance. Therefore, there is an award of actual damages to support an award of exemplary damages. *See Tex. Builders v. Keller*, 928 S.W.2d 479, 481 (Tex.1996) (punitive damages may not be awarded unless actual damages are found); *Juliette Fowler Homes*, 793 S.W.2d at 667 (same). Waste Disposal's third issue is overruled.

### V. Issues Raised by Cross–Appellant Landowners

#### A. Jurisdiction over the Kelley Estate

By their first cross-issue, the landowners contend the defendant Estate waived its right to a directed verdict by participating in the case and is estopped from asserting the trial court's lack of jurisdiction over it.

 Because an estate is not a legal entity, it cannot be sued as such. *Henson v. Estate of Crow*, 734 S.W.2d 648, 649 (Tex.1987); *Price v. Estate of Anderson*, 522 S.W.2d 690, 691 (Tex.1975). A suit brought against the estate, rather than a personal representative, is a matter of fundamental jurisdiction, which cannot be waived as no legal entity is named as a defendant; there is no one to waive the defect. *Id.* (citing *Henson*, 734 S.W.2d at 649; *Dueitt v. Dueitt*, 802 S.W.2d 859, 861 (Tex.App.—Houston [1st Dist.] 1991, no writ)).

 In the present case, the landowners sued the estate of Franklin F. Kelley, and although the Estate appeared and participated in the case, the landowners did not sue by name, or serve the personal representative of the Estate. At no time did the personal representative appear or participate in this case. When the trial

concluded, the Estate moved for directed verdict on jurisdictional grounds claiming it was not a legal entity. The trial court granted the directed verdict. Accordingly, we conclude the Estate did not waive its right to a directed verdict.

 A suit seeking to establish a decedent's liability on a claim and subject an estate's property to a judgment should ordinarily be instituted against the personal representative or, under appropriate circumstances, the heirs or beneficiaries. *Price*, 522 S.W.2d at 691. Nonetheless, a judgment against an estate is not necessarily void if the personal representative of the estate appears in or participates in the lawsuit. *Estate of C.M. v. S.G.*, 937 S.W.2d 8, 10 (Tex.App.—Houston [14th Dist.] 1996, no writ).

In determining whether or not the Estate was estopped from asserting the trial court's lack of jurisdiction over it, we are guided by the Houston Court's analysis in *Estate of C.M.*, wherein the estate was sued without any reference to the personal representative. *Id.* The deceased's husband, the executor of the estate, was, however, sued as a co-defendant, but retained separate counsel from the estate. *Id.* Although the deceased's husband participated at the trial court level for more than two years, he did not appear at trial as executor. *Id.* at 10. He was served with citation as a representative of the estate, but did not adopt the case on behalf of the estate as personal representative. *Id.* Although the jury found the estate liable, the Houston Court concluded the trial court lacked jurisdiction to enter judgment against the estate, and reversed that portion of the trial court's judgment against the estate and dismissed the appeal. *Id.* at 10–11.

occurred." *Happy Harbor Methodist Home, Inc. v. Cowins*, 903 S.W.2d 884, 886 (Tex.

App.—Houston [1st Dist.] 1995, no writ). Thus, we consider this argument waived.

In this case, the Estate, not the personal representative of the Estate, was sued. Furthermore, the landowners concede there is no indication in the record that the personal representative appeared, answered or participated directly in any way in the trial. Even though the Estate answered and was represented by counsel, because the personal representative of the Estate neither appeared nor participated in the lawsuit, we conclude estoppel does not apply. *See id.* at 10.

The trial court did not have jurisdiction to enter judgment against the Kelley Estate, therefore, the dismissal was proper. We overrule the landowners' first cross-issue.

### B. Strict Liability Charge

By their second cross-point, the landowners contend strict liability should have been imposed in this case. However, we conclude the landowners have waived their right to complain about this issue. First, they refer us to an order of the trial court granting the "Generator defendant's" motion for summary judgment with regard to strict liability. Waste Disposal was not named as a party in that motion or in the trial court's order. The landowners also refer us to the charge of the court which did not submit strict liability. They do not direct this Court to any instruction or requested issue regarding strict liability as to Waste Disposal or any complaint made concerning the trial court's decision not to submit the issue or instruction. Rule 33.1 of the Texas Rules of Appellate Procedure requires a timely "request, objection, or motion" to preserve error. TEX. R.APP. P. 33.1. We find none. Rather, the objections to the charge and proposed issues, as set out in the record, show that no request for a strict liability issue against Waste Disposal was raised. Accordingly, the landowner's second cross-issue is waived.

### C. Constitutional Challenge to Cap on Exemplary Damages

Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of two times the amount of economic damages, plus an amount equal to any non-economic damages found by the jury, not to exceed $750,000.00, or $200,000.00. *See* TEX. CIV. PRAC. & REM.CODE § 41.008(b)(1)–(2) (Vernon Supp.2002). The jury awarded Soila Valdez $500,000.00 in exemplary damages against Waste Disposal; however, after applying settlement credits and section 41.008, the trial court reduced the exemplary damage award to $200,000.00.

Valdez now urges, by a third cross-issue, that the cap on exemplary damages imposed by section 41.008 of the Texas Civil Practice and Remedies Code is unconstitutional because it violates the Texas Constitution's open courts provision and its separation of powers doctrine. *See id.*

#### 1. Open Courts Provision

The open courts provision of the Texas Constitution provides "[a]ll courts shall be open and every person for an injury done him, and in his lands, goods, person or reputation shall have a remedy by due course of law." TEX. CONST. art. I, § 13. "The open courts provision prevents the legislature from abrogating the right to assert a well-established common law cause of action unless the reason for the legislature's action outweighs the litigants' constitutional right of redress." *Hall v. Diamond Shamrock Ref. Co.*, No. 04–99–00370–CV, —— S.W.3d ——, ——, 2001 WL 716769, at *12, 2001 Tex.App. LEXIS 4217, at *35–36 (San Antonio June 27, 2001, no pet.) (citing *Owens Corning v. Carter,* 997 S.W.2d 560, 573 (Tex.1999)).

The open courts provision does not permit a statute to restrict a common law cause of action in a way that is unreasonable or arbitrary, in view of the statute's purpose. *Id.* Therefore, to establish a violation of the open courts provision, a plaintiff must show: (1) she has a well-recognized common law cause of action that is being restricted; and (2) the restriction is unreasonable or arbitrary when balanced against the purpose and basis of the statute. *Id.* at ——, 2001 WL 716769, at *12, 2001 Tex.App. LEXIS 4217, at *36.

■■■ In *Hall*, the court looked to the 1987 tort reform legislation and determined that one of its purposes was to make the Texas civil justice system more predictable. *Id.* at ——, 2001 WL 716769, at *12, 2001 Tex.App. LEXIS 4217, at *37 (citing *Seminole Pipeline Co. v. Broad Leaf Partners*, 979 S.W.2d 730, 751 (Tex. App.—Houston [14th Dist.] 1998, no pet.); John T. Montford and Will G. Barber, *1987 Texas Tort Reform: The Quest for a Fairer and More Predictable Texas Civil Justice System*, 25 Hous. L.Rev. 59, 69 (1988)). The cap found in section 41.008 presumably provides a measure of predictability by narrowing the range of punitive damages awarded to a plaintiff. *Id.* (citing *Seminole Pipeline*, 979 S.W.2d at 751). The court also looked at the extent to which the plaintiff's rights were affected. *Id.* The purpose of exemplary damages is not to restore a party's property or compensate for loss but rather exemplary damages are levied for the purposes of punishment and deterrent. *Id.* at ——, 2001 WL 716769, at *12, 2001 Tex.App. LEXIS 4217, at *37–38 (citing *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17 (Tex. 1994); *Seminole Pipeline*, 979 S.W.2d at 758); *see* TEX. CIV. PRAC. & REM.CODE § 41.001(5) (Vernon 1997) ("exemplary damages" include punitive damages and means "any damages awarded as a penalty

or by way of punishment"). The *Hall* Court ultimately determined, therefore, that because the open courts provision of the Texas Constitution serves to protect only private rights and interests, and because the statutory cap on exemplary damages affects only public punishment interests, it does not infringe upon any constitutional right held by Hall. *Hall*, at ——, 2001 WL 716769, at *12, 2001 Tex. App. LEXIS 4217, at *37–38.

In *Seminole Pipeline*, the appellate court also upheld the constitutionality of section 41.008, concluding that while a plaintiff may be motivated to pursue the public purpose of exemplary damages in the hope of securing such damages, those proceeds are a windfall and are certainly not a matter of right. *Seminole Pipeline*, 979 S.W.2d at 758. The Fourteenth Court of Appeals found that the statute did not infringe upon any constitutional rights held by the cross-appellees in that case. *Id.*

■■■ Likewise, Valdez has not shown that the limitation on exemplary damages found in section 41.008 is unreasonable or arbitrary when balanced against the purpose and basis of the statute, that being, exemplary damages are levied for the purposes of punishment and deterrent. *See Hall*, at ——, 2001 WL 716769, at *13, 2001 Tex.App. LEXIS 4217, at *38. We conclude, therefore, section 41.008 of the Texas Civil Practices and Remedies Code does not infringe upon the constitution's open courts provision.

### 2. Separation of Powers Doctrine

Cross-appellant Valdez also contends section 41.008 usurps the constitutional mandate of separation of powers. Article II, section 1, of the Texas Constitution, provides that each of the three branches of government, the legislative, the executive, and the judiciary "shall be confided to a

separate body ... and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted." Tex. Const. art. II, § 1.

▮ Valdez argues the limitation imposed by section 41.008 usurps the power of the court to assess the adequacy of a jury award for exemplary damages and to alter the award. *See Moriel,* 879 S.W.2d at 17 (duty of court is to ensure defendants who deserve to be punished receive appropriate level of punishment, while at same time prevent excessive or otherwise erroneous punishment); *Fort Worth Elevators Co. v. Russell,* 123 Tex. 128, 70 S.W.2d 397, 408 (1934) (amount of exemplary damages allowed must be reasonably proportioned to actual damages found); *see also Owens–Corning Fiberglas Corp. v. Malone,* 972 S.W.2d 35, 39 (Tex.1998) (*Kraus* factors are to be considered in evaluating exemplary damage award).[2] Valdez contends the judicial function of remittitur cannot be performed when the legislature reduces punitive damages to a formula that prevents the judiciary from evaluating the conduct involved in each individual case.

▮ Any constitutionality review begins with the presumption that the statute is valid and that the legislature has not acted unreasonably or arbitrarily. *Barshop v. Medina County Underground Water Conserv. Dist.,* 925 S.W.2d 618, 629 (Tex.1996). The law-making power of the people is vested in our state legislature by article III, section 1 of the Texas Constitution. Tex. Const. art. III, § 1. The power of the legislature includes the power to make, alter, and repeal laws when such power is not expressly or impliedly forbidden by other provisions of the constitution. *Walker v. Baker,* 145 Tex. 121, 128, 196 S.W.2d 324, 328 (1946).

▮ It is clear, by the adoption of chapter 41 of the civil practice and remedies code, the legislature has used its lawmaking power to regulate the award of exemplary damages. For example, chapter 41 applies whenever "a claimant seeks exemplary damages relating to a cause of action." Tex. Civ. Prac. & Rem.Code Ann. § 41.002(a) (Vernon Supp.2002).

> [Chapter 41] establishes the maximum exemplary damages that may be awarded in an action subject to this chapter, including an action for which exemplary damages are awarded under another law of this state. This chapter does not apply to the extent another law establishes a lower maximum amount of exemplary damages for a particular claim.

*Id.* at § 41.002(b). If there is a conflict between chapter 41 and another statute, chapter 41 controls. *Id.* at § 41.002(c). Except where there are nominal damages which result from malice and in wrongful death claims involving workers' compensation, exemplary damages may be awarded only if damages other than nominal damages are awarded. *See id.* at § 41.004; *Wright v. Gifford–Hill & Co.,* 725 S.W.2d 712, 714 (Tex.1987). Chapter 41 also disallows recovery of exemplary damages by "a claimant who elects to have his recovery multiplied under another statute." Tex. Civ. Prac. & Rem.Code Ann. § 41.004(b) (Vernon Supp.2002). Furthermore, we note that chapter 41 includes the *Kraus* factors as evidence that shall be considered by the trier of fact in determining the amount of exemplary damages. *Id.* at

---

**2.** The *Kraus* factors to consider include: (1) nature of wrong; (2) character of conduct involved; (3) culpability of wrongdoer; (4) situation and sensibilities of parties; and (5) extent to which defendant's conduct offends public's sense of justice and propriety. *Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981).

§ 41.011(a)(1)–(5); *see Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981). Through this section, the legislature has acknowledged the role of the trier of fact in determining the amount of exemplary damages, yet has exercised its law-making power to limit such damages.

Valdez urges us to follow the courts in *Best v. Taylor Mach. Works,* 179 Ill.2d 367, 228 Ill.Dec. 636, 689 N.E.2d 1057 (1997), and *Ohio Acad. of Trial Lawyers v. Sheward,* 86 Ohio St.3d 451, 715 N.E.2d 1062 (1999), which have determined that exemplary damages cap provisions in the respective states are unconstitutional because they invade the power of the judiciary to limit excessive damage awards. *Sheward,* 715 N.E.2d at 1080; *Best,* 228 Ill. Dec. 636, 689 N.E.2d at 1076. Neither case, however, acknowledges the legislature's constitutional power to make, amend, alter, and abolish laws without violating the principle of separation of powers, the reasoning we conclude applies in this case. *See Walker,* 196 S.W.2d at 328; *see also* Tex. Const. art. III, § 1 (law-making power vested in state legislature). Accordingly, we decline to follow these cases.

We find no language in section 41.008, the section about which Valdez complains, that attempts to limit the exercise of the judiciary's constitutional powers or jurisdiction. The statute at issue only limits the amount of exemplary damages which, as the *Hall* Court concluded, is an attempt by the legislature to make the Texas civil justice system more predictable by narrowing the range of exemplary damages awarded to a plaintiff. *Hall,* at ——, 2001 WL 716769, at *12, 2001 Tex.App. LEXIS 4217, at *37. The trial court continues to have the power to remit damages within the confines of the statute. The legislature has not acted unreasonably or arbitrarily. *See Barshop,* 925 S.W.2d at 629. Because we have determined that the cap on exemplary damages does not violate the constitutional mandates argued in this appeal, we overrule cross-appellant Valdez's third cross-issue.

## VI. Conclusion

The judgment of the trial court is reversed and judgment is rendered that Valdez take nothing against Waste Disposal for mental anguish damages. In all other respects, the judgment is affirmed.