Affirmed in Part; Reversed and Remanded in Part; Reversed and Rendered
in Part; and Opinion filed June 24, 2004









 

Affirmed in Part; Reversed and
Remanded in Part; Reversed and Rendered in Part; and Opinion filed
June 24, 2004.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00628-CV

____________

 

MOWAFAC AMIKE@ JABRI AND JOINT ACTIVE BUSINESS RELATED, INC., Appellants

 

V.

 

KIFAH
WAJIH ALSAYYED, Appellee

 

___________________________________________________

 

On Appeal from the 190th District Court

Harris County, Texas

Trial Court Cause No. 00-09387

 

___________________________________________________

 

O P I N I O N








In this suit under the Deceptive
Trade Practices Act (DTPA),[1]
appellants, Mike Jabri (AJabri@) and his
corporation, Joint Active Business Related, Inc. (the ACorporation@), appeal
the jury=s verdict
in favor of appellee, Kifah Wajih Alsayyed (AAlsayyed@).  In seven issues, appellants contend (1) the
evidence is insufficient to support the jury=s award
of damages; (2) Alsayyed was compensated twice for the same injury; (3) the
DTPA does not apply to the underlying transaction; (4) the trial court erred in
allowing Alsayyed=s
intervention; and (5) the trial court erred in permitting a bifurcated
trial.  We reverse that portion of the
judgment ordering appellants to pay Alsayyed $60,000 in actual damages, remand
to the trial court for an election between damages awarded as a result of Jabri=s conduct
and those awarded as a result of the Corporation=s
conduct, and render judgment deleting the awards of mental anguish
damages.  In all other respects, we
affirm.

I.  Factual Background

Jabri owns several convenience
stores in the Houston area.  The
Corporation operates most of the convenience stores.  Jabri leased one of the stores, Beltway Fast
Stop, to Sam and Nisreen Khatib.  The
Khatibs paid the Corporation $100,000 for the Agoodwill@ of the
Beltway Fast Stop, paid a separate amount for the inventory, and paid $4,000
per month to lease the premises.  In
August 1998, the Corporation leased another store, Broadway Fast Stop, to
Alsayyed.  Alsayyed paid $120,000 for the
Agoodwill,@ $44,085
for the inventory, and $5,000 per month to lease the premises.  Both Khatib and Alsayyed also paid an
additional five to six hundred dollars per month in escrow for property taxes
and insurance.  Jabri represented to the
Khatibs and Alsayyed that the Fast Stop convenience stores were ongoing
businesses with a good customer base and each would generate a profit of
approximately $10,000 per month.








Alsayyed and the Khatibs did not
realize the profits promised by Jabri. 
Instead, they found themselves in businesses that did not have a
substantial customer base.  The stores
were in unsavory locations, and were experiencing thefts and other crimes.  The Khatibs filed suit against Jabri and the
Corporation for alleged fraud and violations of the DTPA.  Alsayyed intervened in the lawsuit, also
suing Jabri and the Corporation for alleged fraud and violations of the
DTPA.  The jury found that both Jabri and
the Corporation had knowingly engaged in an unconscionable action or course of
action that was a producing cause of damages to the Khatibs and Alsayyed.  The jury also found that the Khatibs and
Alsayyed suffered mental anguish as a result of Jabri=s and the
Corporation=s unconscionable actions.  The trial court=s initial
judgment ordered both Jabri and the Corporation to pay the Khatibs $50,000 and
Alsayyed $60,000 in actual damages, and to pay the Khatibs $12,500 and Alsayyed
$5,000 in mental anguish damages.  After
judgment, the Khatibs settled their claims with Jabri and the Corporation and
moved to modify the final judgment to exclude the amounts previously awarded to
them.  The court=s amended
final judgment ordered that the Khatibs take nothing and that Jabri and the
Corporation each pay Alsayyed $60,000 in economic damages, $5,000 in mental
anguish damages, and reasonable attorney=s fees.  

In seven points of error,
appellants contend (1) the evidence was insufficient to support the actual
damages; (2) the jury compensated Alsayyed twice for the same injury; (3) the
DTPA does not apply to Alsayyed=s
purchase of goodwill; (4) Alsayyed should not have been permitted to intervene
in the Khatibs= lawsuit; (5) the evidence was
insufficient to support a damage award against the Corporation; (6) the
evidence was insufficient to support mental anguish damages; and (7) the trial
court erred in bifurcating the trial.

II.  Sufficiency of the Evidence

A.  Standard of Review

When a party attacks the legal
sufficiency of an adverse finding on an issue it did not have the burden to
prove at trial, it must demonstrate that there is no evidence to support the
adverse finding.  Aquila Southwest
Pipeline, Inc. v. Harmony Exploration, Inc., 48 S.W.3d 225, 236 (Tex. App.CSan
Antonio 2001, pet. denied).  In reviewing
a no‑evidence issue, we consider all of the record evidence in a light
most favorable to the verdict and indulge every reasonable inference from that
evidence in support of the verdict.  Id.  We must determine whether the proffered
evidence as a whole rises to a level that would Aenable
reasonable and fair‑minded people to differ in their conclusions.@  Transp. Ins. Co. v. Moriel, 879 S.W.2d
10, 25 (Tex. 1994).








A challenge to the legal
sufficiency of the evidence must be sustained when the record discloses one of
the following: (1) a complete absence of evidence of a vital fact; (2) the
court is barred by rules of law or evidence from giving weight to the only
evidence offered to prove a vital fact; (3) the evidence offered to prove a
vital fact is no more than a mere scintilla; or (4) the evidence conclusively
establishes the opposite of a vital fact. 
Merrell Dow Pharm., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex.
1997).  

When reviewing a challenge to the
factual sufficiency of the evidence, we must consider all of the evidence in
the record.  See Plas Tex, Inc. v.
U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989).  If a party is attacking the factual
sufficiency of an adverse finding when the other party has the burden of proof,
that party must demonstrate there is insufficient evidence to support the
adverse finding.  Aquila, 48
S.W.3d at 236.  In reviewing a factual
insufficiency challenge, we weigh and examine all of the evidence that supports
the verdict and that which is contrary to it. 
Id.  We set aside the
verdict only if the evidence is so weak the verdict is clearly wrong and
manifestly unjust.  See Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986).

B.  Actual Damages

In their first issue, Jabri and
the Corporation [appellants] contend the evidence is legally and factually
insufficient to support the award of actual damages.  In separate questions, the jury found Jabri
and the Corporation engaged in an unconscionable action or course of action
that was a producing cause of damages to Alsayyed.  The jury was then asked to determine what
damages would compensate Alsayyed for his injury.  The jury was instructed to consider the
following element of damages:

The difference, if any, in
the value of the assets actually received by Kifah Alsayyed and the value of
all the assets if they had been conveyed to Kifah Alsayyed as represented.  The difference in value, if any, shall be
determined at the time and place of the transfer of the assets in August 1998.

 








Under common law, the measure of damages for
misrepresentation is either the Aout of pocket@ measure or the Abenefit of the bargain@ measure.  See Arthur Andersen & Co. v. Perry
Equip. Corp., 945 S.W.2d 812, 817 (Tex. 1997).  The out-of-pocket measure compensates for the
difference between what the consumer paid and what he received; the benefit of
the bargain measure compensates for the difference between what a consumer was
promised and what he received.  Id.  The DTPA allows a plaintiff to recover under
the higher of these two measures.  Id.  However, under either measure of damages, the
plaintiff is required to prove the value of the item received, i.e., the
fair market value.  W.O. Bankston
Nissan v. Walters, 754 S.W.2d 127, 128 (Tex. 1988).

A property owner may testify as to fair market value if his
testimony reveals that he is familiar with the market value of the
property.  Redman Homes, Inc. v. Ivy,
920 S.W.2d 664, 669 (Tex. 1996).  This
testimony, however, must be based on the owner=s assessment of the market and not
the intrinsic value of the property to him.  See id. 
Market value is defined as the price property would bring when offered
for sale by one who desires, but is not obligated, to sell, and is bought by
one who is under no obligation to purchase. 
Waste Disposal Ctr., Inc. v. Larson, 74 S.W.3d 578, 583 (Tex.
App.CCorpus Christi 2002, pet. denied).

The record reflects that Alsayyed
purchased the goodwill of the Broadway Fast Stop for $120,000, and the
inventory for $44,085, and also that he agreed to pay $5,000 rent per
month.  Jabri represented that the
convenience store was an on-going business with an established customer base
and that Alsayyed would make a profit immediately after taking over the
business.  Alsayyed testified that when
he took over the business, he discovered the store was in a high crime area and
frequented by drug dealers, prostitutes, and vagrants.  He also testified that the store was
routinely robbed and that customers frequently drove away without paying for
gasoline.  In order to operate the
business, Alsayyed was required to install outdoor lighting, a new lock on the
front door, a cash register, and an ice machine.  








When Alsayyed decided he no
longer wanted to operate the business, Jabri recommended that Alsayyed find another
tenant for the store.  Alsayyed testified
that he placed an advertisement in the newspaper and received several inquiries
about leasing the store.  However, when
Alsayyed explained that the tenant would have to pay $120,000 in goodwill and
$5,000 in monthly rent, he was unable to locate any one willing to pay $120,000
for goodwill alone.  When asked what he
received in exchange for his $120,000, Alsayyed testified he received nothing.  Alsayyed further testified that much of the
grocery and over-the-counter drug inventory could not be sold because the
expiration dates on the items had passed. 
On appellants= behalf,
regarding goodwill, Robby Lee Bates, an accountant, testified that in
accounting terms, goodwill is the benefit of an ongoing business. Jabri
testified that he had operated the Broadway Fast Stop and it was a going
concern at the time he leased it to Alsayyed. 


Viewing the evidence in the light
most favorable to the verdict, we find it is legally sufficient to support the
jury=s
verdict.  Further, the evidence is not so
weak that the verdict is clearly wrong and manifestly unjust.  Appellants= first
issue is overruled.

C.  The Corporation=s
Liability

In the first sub-part of their
fifth issue, appellants argue the jury misunderstood the sufficiency of the
evidence as to the elements of Questions 20A and 23A.  In response to Questions 13 and 16, the jury
found Jabri and the Corporation engaged in false, misleading, or deceptive acts
or practices.  In response to Questions
14 and 17, the jury found Alsayyed suffered zero damages as a result of that
conduct.  In response to Questions 19 and
22, the jury found Jabri and the Corporation engaged in an unconscionable
action or course of action.  In response
to Questions 20 and 23, the jury found Alsayyed suffered $60,000 in damages as
a result of those actions.  Appellants
contend the jury was confused because it found zero damages as a result of a
false, misleading, or deceptive act or practice, but found $60,000 in damages
as a result of unconscionable conduct.








When a party alleges conflicting
jury answers, the threshold inquiry is whether the findings are about the same
material fact.  Bender v. So. Pac.
Transp. Co., 600 S.W.2d 257, 260 (Tex. 1980).  If the findings are about the same material
fact, an appellate court must attempt to reconcile any conflict in the
findings.  Id.  When the questions are amenable to more than
one reasonable construction, we adopt the construction that avoids a
conflict.  Id.; see also Anderson,
Greenwood & Co. v. Martin, 44 S.W.3d 200, 215 (Tex. App.CHouston
[14 Dist.] 2001, pet. denied).

In this case, there is no
evidence that the findings concern the same material fact.  While the basic damage questions were worded
identically, the predicate questions were worded differently.  The jury could have found some of appellants= conduct
to be deceptive and other conduct to be unconscionable.  Because the questions are not about the same
material fact, the answers did not conflict. 
See Anderson, Greenwood & Co., 44 S.W.3d at 215.  The first sub-part of appellants= fifth
issue is overruled.

In the second sub-part of issue
five, appellants contend the evidence is insufficient to support an award of
damages against the Corporation. 
Appellants contend the transaction upon which Alsayyed=s lawsuit
is based was solely conducted by Jabri, the individual, and that the
Corporation cannot be held liable for any unconscionable action.  In his petition in intervention, Alsayyed
alleged that Jabri made misrepresentations on behalf of the Corporation.

Corporations, by their very
nature, cannot function without human agents. 
Holloway v. Skinner, 898 S.W.2d 793, 795 (Tex. 1995).  As a general rule, the actions of a corporate
agent on behalf of the corporation are deemed the corporation=s
acts.  Id.; see also Pabich v. Kellar,
71 S.W.3d 500, 507 (Tex. App.CFort
Worth 2002, pet. denied).  A corporation
is a separate legal entity that normally insulates its owners or shareholders
from personal liability.  Castleberry
v. Branscum, 721 S.W.2d 270, 271 (Tex. 1986); In re Morris, 12
S.W.3d 877, 885 (Tex. App.CTexarkana
2000, no pet.).








Here, the evidence is sufficient
to show that Jabri was acting on behalf of the Corporation.  The lease agreement for Broadway Fast Stop
lists Jabri as the owner.  The invoice
for property taxes, however, was sent to Alsayyed by the Corporation.  The Corporation also entered into a contract
with Conoco for gasoline delivered to Broadway Fast Stop.  Further, Jabri frequently requested that rent
checks be made payable to the Corporation. 
Jabri testified that if he needed money, he would request the checks be
made payable to him; if the Corporation needed money, he would request the
checks be made payable to the Corporation. 
Jabri further testified that he is the sole shareholder and director of
the Corporation, and that the Corporation owns no assets and does not maintain
books and records.

In sum, we find this evidence
legally and factually sufficient to support the jury=s
verdict.  The second sub-part of issue
five is overruled.  

D.  Mental Anguish Damages

In their sixth issue, appellants
contend the evidence is legally and factually insufficient to link their
actions to any mental anguish suffered by Alsayyed.  Under the DTPA, mental anguish damages are
recoverable when there is proof of deceptive or unconscionable actions or
courses of action committed knowingly.  Norwest
Mortgage, Inc. v. Salinas, 999 S.W.2d 846, 862 (Tex. App.CCorpus
Christi 1999, pet. denied).  The jury
found Jabri and the Corporation violated the DTPA and that such violations were
committed knowingly.  Jabri and the
Corporation have not challenged the finding of a knowing violation.  








An award of mental anguish
damages requires either direct evidence of the nature, duration, or severity of
the plaintiff=s anguish or other evidence of a
high degree of mental pain and distress that is more than mere worry, anxiety,
vexation, embarrassment, or anger.  Saenz
v. Fidelity & Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex.
1996).  Further, there must be proof that
the knowing unconscionable action or course of action was a producing cause of
the mental anguish.  Latham v.
Castillo, 972 S.W.2d 66, 69 (Tex. 1988). 
To show appellants=
unconscionable conduct was a producing cause of his mental anguish, Alsayyed
must prove that appellants= actions
had such an effect in producing the harm as to lead reasonable people to regard
it as a cause, in which there lurks the idea of responsibility, rather than in
the so‑called Aphilosophic
sense,@ which
includes every one of the great number of events without which any happening
would not have occurred.  See Lear
Siegler, Inc. v. Perez, 819 S.W.2d 470, 472 (Tex. 1991).

Alsayyed testified that the front
door of the store would not lock, that there was no indoor restroom for
employees, that the lighting was almost non-existent, and that the store was
frequented by prostitutes, drug dealers, and vagrants.  He further testified that a murder occurred
at the store while he was operating it, he was robbed at gunpoint, and there
were numerous late night burglaries of the store.  Alsayyed maintains that the sale of the
business and Jabri=s intent
that Alsayyed take over the operations of the store regularly placed him in
harm=s way and
caused him to fear for his life. 

Alsayyed failed to present any
evidence, however, that his fear was caused by appellants= knowing
unconscionable acts.  See Saenz v.
Fidelity & Guar. Ins. Underwriters, 925 S.W.2d 607, 614 (Tex. 1996).  Alsayyed=s fear
stemmed from the high crime in the area, not from appellants=
misrepresentations regarding the profitability of the business.  Further, Alsayyed did not testify that any of
appellants= actions caused or contributed to
the existing conditions at Broadway Fast Stop. 
Additionally, Alsayyed did not testify that any of the conditions at the
store caused him a high degree of mental pain and distress that was more than
mere worry, anxiety, vexation, embarrassment, or anger.  See Saenz v. Fidelity & Guar. Ins.
Underwriters, 925 S.W.2d 607, 614 (Tex. 1996).  There was no testimony that the conditions at
Broadway Fast Stop caused Alsayyed physical injury, illness, loss of sleep, or
a substantial disruption in his daily routine. 


Alsayyed also contends the
existing unsafe conditions were not disclosed to him and that the failure to
disclose was the cause of his mental anguish. 
In his amended petition in intervention, Alsayyed stated that Jabri Anever
mentioned@ the serious security problems at
the store.  Alsayyed did not allege in
his petition that the failure to disclose caused him mental anguish.  The petition did state that ASuch
facts resulted in Alsayyed being unable to keep employees working on the
graveyard shift at the store for any significant period of time.@  








However, non-disclosure is
neither fraudulent, nor negligent, unless there is a duty to disclose.  Bradford v. Vento, 48 S.W.3d 749, 755
(Tex. 2001).  No general duty of
disclosure arises between parties contemplating a contract.  Fleming v. Texas Coastal Bank of Pasadena,
67 S.W.3d 459, 461 (Tex. App.CHouston
[14th Dist.] 2002, pet. denied).  Under section 551 of the Restatement
(Second) of Torts, a party to a business transaction has a duty to disclose
certain matters in four situations that do not require the existence of a
fiduciary relationship.  See
Restatement (Second) of Torts ' 551 (1977).  Even if
section 551 of the Restatement (Second) of Torts applied under Texas law, it
would not impose on appellants a duty to disclose the unsafe conditions under
these circumstances.  See Bradford,
48 S.W.3d at 755B56 (Tex. 2001) (noting that Texas Supreme Court has not
adopted section 551 of the Restatement (Second) of Torts and holding that, even
if the court were to adopt it, there was legally insufficient evidence to
support fraud liability).  We find a
complete absence of evidence that appellants= knowing
unconscionable actions were a producing cause of Alsayyed=s mental
anguish and sustain appellants= sixth
issue.

III.  Double
Recovery

In their second issue, appellants
assert the trial court erred in allowing the jury to compensate Alsayyed twice
for the same injury.  In response to
Question 19, the jury found that Jabri engaged in an unconscionable action or
course of action that was a producing cause of damages to Alsayyed.  In response to Question 20A, the jury found
the difference in the value actually received by Alsayyed and the value of the
assets conveyed to Alsayyed as represented was $60,000.  In response to Question 22, the jury found
the Corporation engaged in an unconscionable action that was a producing cause
of damages to Alsayyed.  In response to
Question 23A, the jury found the difference in the value of the assets received
by Alsayyed and the value of the assets if they had been conveyed as
represented was $60,000.  The trial court
entered judgment in accordance with the jury=s
verdict.  Appellants contend the jury=s verdict
allows Alsayyed to recover twice for the same injury.  








The Aone
satisfaction rule@
prohibits a plaintiff from recovering twice for a single injury.  Crown Life Ins. v. Casteel, 22 S.W.3d
378, 390B91 (Tex.
2000).  The rule provides that when a
claimant seeks recovery for the same injuries from multiple parties, the
claimant is entitled to only one recovery on those injuries.  Utts v. Short, 81 S.W.3d 822, 831
(Tex. 2002).  Under Texas law, the
Aone
satisfaction rule@ is
designed to prevent a windfall to the plaintiff, and dictates that when a
plaintiff files suit against multiple defendants for a single injury, he must
elect between the damage awards.  See
First Title of Waco v. Garret, 860 S.W.2d 74, 78 (Tex. 1993).  

The evidence supports appellants=
contention that the jury=s verdict
amounts to a double recovery.  The
damages sought by Alsayyed were for the misrepresentations made to him by
Jabri, individually, and on behalf of the Corporation.  Alsayyed=s injury
was not divisible between the two defendants. 
Therefore, the trial court erred in not requiring Alsayyed to elect
between the damages awarded as a result of Jabri=s
unconscionable conduct and the damages awarded as a result of the Corporation=s
unconscionable conduct.  Where the
prevailing party fails to elect between damage amounts awarded for the same
injury, the court should use the findings affording the greater recovery and
render judgment accordingly.  See
American Baler Co. v. SRS Sys., Inc., 748 S.W.2d 243, 246 (Tex. App.CHouston
[1st Dist.] 1988, no writ).  In this
case, however, the damage awards were identical.  Therefore, we remand to the trial court for
Alsayyed=s
election between the damages awarded as a result of Jabri=s
unconscionable conduct and those awarded as a result of the Corporation=s
unconscionable conduct.  Appellants= second
issue is sustained. 

IV.  Consumer Status








In their third issue, appellants
contend the trial court erred in upholding the jury=s award
of damages under the DTPA because Alsayyed was not a consumer as contemplated
by that statute.  To pursue a DTPA cause
of action, a plaintiff must be a consumer. 
Tex. Bus. & Com. Code Ann.
' 17.50(a)
(Vernon 2002); Crown Life, 22 S.W.3d at 386.  The question of consumer status under the
DTPA is a question of law for the court to decide.  Lukasik v. San Antonio Blue Haven Pools,
Inc., 21 S.W.3d 394, 401 (Tex. App.CSan
Antonio 2000, no pet.).  To qualify as a
consumer, a plaintiff must meet two requirements:  (1) the person must seek or acquire goods or
services by purchase or lease, and (2) the goods or services purchased or
leased must form the basis of the complaint. 
Id.  The DTPA excludes
those transactions that convey wholly intangible property rights, which are not
associated with any collateral services or goods.  Riverside Nat=l Bank v.
Lewis, 603 S.W.2d 169, 174B75 (Tex.
1980).  In evaluating Alsayyed=s
consumer status, we examine whether his objective was the purchase or lease of
a good or service.  Tex. Bus. & Com. Code Ann. ' 17.45
(Vernon 2002); see also La Sara Grain Co. v. First Nat'l Bank, 673
S.W.2d 558, 567 (Tex. 1984).  

Appellants contend that Alsayyed=s DTPA
claim is based solely on his purchase of the goodwill of the business, which is
an intangible.  The record reflects,
however, that when Alsayyed acquired the business, he not only purchased
goodwill, but in the same transaction, purchased the inventory of the store and
services associated with operating it. 
Jabri represented that he would help Alsayyed learn how to operate the
business including reporting sales tax and ordering inventory.  Jabri further provided the services of his
brother to act as a bookkeeper during the first month Alsayyed operated the
business.  These goods and services were
an objective of the transaction and not merely incidental to it.  Therefore, the transaction between appellants
and Alsayyed involved the purchase or lease of goods and services for purposes
of the DTPA.  Appellants= third
issue is overruled.

V.  Intervention








In their fourth issue, appellants
contend the trial court erred in permitting Alsayyed to intervene in the
Khatibs=
lawsuit.  Any party may intervene by
filing a pleading, subject to being stricken by the court on motion of any
party.  Tex.
R. Civ. P. 60.  The trial court
has broad discretion in determining whether an intervention should be
struck.  Guaranty Fed. Sav. Bank v.
Horseshoe Operating Co., 793 S.W.2d 652, 657 (Tex. 1990); Houston
Lighting and Power v. City of San Antonio, 896 S.W.2d 366, 372 (Tex. App.CHouston
[1st Dist.] 1994, writ dism=d).  Once the motion to strike has been filed, the
burden shifts to the intervenor to show a justiciable interest in the
lawsuit.  Mendez v. Brewer, 626
S.W.2d 498, 499 (Tex. 1982).  The
interest asserted by the intervenor may be legal or equitable in nature.  Id. 
A party has a justiciable interest in a lawsuit, and thus a right to
intervene, when his interests will be affected by the litigation.  Law Offices of Windle Turley, P.C. v.
Ghiasinejad, 109 S.W.3d 68, 71 (Tex. App.CFort
Worth 2003, no pet.). 

Alsayyed=s
interest, as the intervenor, must be such that if the original action had never
been commenced, he could have brought it as the sole plaintiff and would have
been entitled to recover in his own name to the extent of at least part of the
relief sought.  Guaranty Bank, 793
S.W.2d at 657.  An intervenor must show
some present legal or equitable interest in the subject matter that makes it
proper for him to participate in the proceeding.  McCord v. Watts, 777 S.W.2d 809, 811
(Tex. App.CAustin 1989, no writ).  Applying this general rule to the case at
hand, appellant would have had no standing, on either legal or equitable
grounds, to have brought the original claims asserted by the Khatibs.  Alsayyed had no interest in the Khatibs= claims
and they had no interest in his. 
Alsayyed=s
intervention in the Khatibs= lawsuit
was not necessary to effectively protect his interest.  His interest would have been adequately
protected by a separate suit against the appellants.








The trial court=s refusal
to strike the intervention under these circumstances constituted an abuse of
discretion.  However, from our review of
the record, we fail to see how this error was harmful.  Had Alsayyed not been allowed to intervene in
the suit, we presume he would have filed a separate suit to assert his
claims.  Appellant does not suggest
otherwise, nor does appellant cite to any place in the record demonstrating any
harm he suffered as a result of having Alsayyed=s claims
adjudicated in this case rather than in a separate proceeding.  Although appellants make general and
conclusory claims in their appellate brief that they were prejudiced Aby
confusing the jury and aggregating the claims against Appellants,@ the only
record cite appellants provide in their entire briefing on this issue is to the
motion to strike intervention, response, and order.  Appellants cite to no portion of the trial
that they claim demonstrates harm nor do they otherwise give support for any
alleged harm.  

Although Alsayyed went to the jury on his claims for laundry-list
DTPA violations, unconscionable-conduct DTPA violations, and common-law fraud,
the jury found liability and damages only as to his unconscionable-conduct
claims.  Appellants do not assert that
the evidence is insufficient to support the jury=s liability findings as to these
claims.  In fact, there is ample evidence
in the record to support the jury=s findings of liability and economic
damages as to these claims.  Based on our
review of the record, we conclude that the trial court=s error in failing to strike the
intervention did not probably cause the rendition of an improper judgment or
probably prevent appellants from properly presenting the case to the court of
appeals.  Therefore, the error provides
no ground for reversal.  See Tex. R. App. P. 44.1(a); McCord,
777 S.W.2d at 811 (holding that any error in failing to strike intervention was
harmless).  Appellants= fourth
issue is overruled.

VI.  Bifurcation
of Trial

In their seventh issue,
appellants contend bifurcation of the trial was improper because the jury was
allowed to separately consider the single issue of statutory damages under the
DTPA.  Following the jury=s initial
verdict, a second phase of trial took place where the jury was asked to decide
what sum of money as additional damages should be awarded because Jabri=s and the
Corporation=s conduct was committed
knowingly.  The additional damages were
based on mental anguish suffered by Alsayyed. 
In light of our earlier determination that mental anguish damages are
not supported by the evidence, we need not address whether bifurcation of the
trial was error.  Appellants= seventh
issue is overruled.

VII.  Conclusion








Because the judgment improperly
awarded double recovery, we reverse that portion of the judgment that ordered
Jabri and the Corporation to each pay Alsayyed $60,000 in actual damages and
remand to the trial court for an election between the damages awarded as a
result of Jabri=s
unconscionable conduct and those awarded as a result of the Corporation=s
unconscionable conduct.  Having found
legally insufficient evidence to support the award of mental anguish damages,
we render judgment deleting mental anguish damages.  In all other respects, the judgment is
affirmed.

 

 

/s/  Eva M. Guzman

Justice

 

Judgment rendered and Opinion filed June 24, 2004.

Panel consists of Chief Justice Hedges and Justices Frost and Guzman.

 

 











[1]  See
Chapter 17, Texas Business & Commerce Code.